## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PAUL ATKINS,

     *Plaintiff,*

  vs.

HEAVY PETROLEUM PARTNERS, LLC,
*et al.*,

     *Defendants.*

Case No. 14-4016-EFM-KGG

## MEMORANDUM AND ORDER

Plaintiff Paul Atkins filed this lawsuit in state court alleging fraud, fraud on the court, and conspiracy claims under Kansas law. Several Defendants removed the case to federal court. Currently, there are six pending matters before the Court. These motions primarily relate to whether Plaintiff has stated or can state a claim for relief in his Petition or in his proposed Amended Complaint. Because the Court finds that Plaintiff cannot state a plausible claim, the Court grants Defendants' motions for dismissal and denies Plaintiff's motion for leave to file an amended complaint.

### I.     Factual and Procedural Background

Plaintiff Atkins filed a state court Petition ("Petition") in this case in the District Court of Jefferson County, Kansas on January 6, 2014. He included eleven defendants: (1) Heavy Petroleum Partners, LLC ("HPP"), (2) Cherokee Wells, LLC ("Cherokee Wells"), (3) Robert

DeFeo, (4) John Wesley Broomes, (5) Hinkle Law Firm, LLC, (6) Prometheus Petroleum, LLC, (7) David E. Orr, (8) Arden Ellis, (9) Jens Hansen, (10) JAG Petroleum, LLC ("JAG"), and (11) Maclaskey Oilfield Services, Inc.

Atkins' Petition alleged six state law claims arising from a dispute over an oil and gas lease in northeast Kansas.   He alleged three fraud claims, two fraud on the court claims, and a conspiracy claim.   All of these claims related to incidents that allegedly occurred prior to or during the pendency of a previous lawsuit in which Atkins was a defendant.[1]   The previous lawsuit, *Heavy Petroleum Partners, LLC v. Atkins*, Case No. 09-1077-EFM ("the First Lawsuit"), was filed in the District of Kansas in 2009.   The following facts are either taken from Plaintiff's Petition or from the record in the First Lawsuit.[2]

Atkins is allegedly the sole owner of a 6.5% overriding royalty interest in an oil and gas lease ("the Noll Lease").   Atkins is also an owner of J.J.R. of Kansas Limited ("J.J.R.").   J.J.R had an ownership interest in a separate oil and gas lease ("the Zachariah Lease").   Generally, Plaintiff alleges in this lawsuit that Defendants fraudulently obtained his interest in both the Zachariah and the Noll Lease.   Counts I through III relate to the Zachariah Lease, and Counts IV through VI relate to the Noll Lease.   These claims are explained in more detail below when they are relevant to the issues.

---

[1] *See* Plaintiff's Petition, Doc. 1-1, p. 2, ¶ 1.  Plaintiff Paul Atkins alleged in the Introduction of his Petition that his "interest in the Noll lease was taken by fraud and without jurisdiction by the defendants during an ongoing action in the Kansas U.S. District Court against the Kansas corporation JJR of Kansas, LLC, for breach of contract." *Id.*  In addition, Plaintiff alleged that "[t]he complained of conduct took place during the conduct of the litigation *Heavy Petroleum Partners, LLC, et al. v. Atkins, et al.*, KS. Dist. Court Case No. 09-1077 where two of the defendants were plaintiffs." Plaintiff's Petition, Doc. 1-1, p. 4, ¶ 19.

[2] The Court will cite to the state court Petition as that is the petition currently before the Court.  Plaintiff filed an Amended Complaint (Doc. 30).  He also filed a Motion for Leave to Amend Plaintiff's Complaint, attaching a proposed Amended Complaint (Doc. 34), which the Court will discuss in more detail below.

In the First Lawsuit, HPP and Cherokee Wells brought an action against J.J.R. and Atkins (as an owner of J.J.R.) alleging that J.J.R. and Atkins had wrongfully interfered with HPP and Cherokee Wells' oil and gas lease interests by shutting-in (turning off) producing oil wells. HPP and Cherokee Wells asserted breach of contract claims and sought to quiet title. On November 16, 2009, J.J.R. and Atkins sought leave to amend their Answer and Counterclaim in the First Lawsuit to assert several counterclaims against HPP and Cherokee Wells, including fraud claims. Specifically, J.J.R. and Atkins alleged:

> Defendants have been damaged by their reliance upon the false, fraudulent, intentionally misleading statements and representations of partners, employees and agents of plaintiffs when defendants detrimentally relied on the statements that plaintiff Heavy Petroleum Partners, L.L.C. was skilled, experienced and qualified to conduct heavy petroleum extraction on defendants' lease with the use of secondary recovery steam injection technology. This fraud resulted in damages to defendants due to their detrimental reliance.[3]

The magistrate judge denied the motion finding, among other things, that J.J.R. and Atkins' request for leave to assert fraud claims was futile because the claims were "conclusory and lack[ed] the specificity required by [Fed. R. Civ. P.] 9(b)" and therefore would not survive a motion to dismiss.[4]

On June 9, 2010, the district court granted HPP and Cherokee Wells' motion for partial summary judgment and entered summary judgment in favor of HPP and Cherokee Wells on their quiet title claim. In December 2010, the district court held a jury trial on the limited issue of whether J.J.R. and Atkins breached their duty to pay under a contract. A jury found J.J.R. and

---

[3] Case No. 09-1077-EFM, Doc. 69-1, pp. 3-4, ¶ 8.

[4] Case No. 09-1077-EFM, Doc. 92, p. 4.

Atkins liable in the amount of $87,387.03.  J.J.R. and Atkins appealed the judgment to the Tenth

Circuit Court of Appeals ("First Appeal").

After the December 2010 jury trial and the district court's entry of judgment, and during

the pendency of J.J.R. and Atkins' appeal, HPP executed on its judgment.  The district court later

described the execution as follows:

> HPP applied for and received a Writ of Execution to execute on the property of
> JJR in order to satisfy the outstanding portion of the judgment.  Although
> Defendants objected to the sale, and the case was on appeal to the Tenth Circuit,
> Defendants did not request a stay of execution on the judgment or post a
> supersedeas bond.  Thus, the Marshal's Sale was proper.
> HPP executed upon the Noll lease during the Marshal's Sale . . . .[5]

The Marshal's Sale was held on August 8, 2011. On November 3, 2011, the district court

conducted a hearing on HPP and Cherokee Wells' Motion to Confirm Execution Sale.    At this

hearing, J.J.R. and Atkins appeared through counsel, and Atkins also appeared personally.  The

following day, on November 4, 2011, the district court entered an order confirming the execution

sale.

J.J.R. and Atkins' First Appeal to the Tenth Circuit raised several issues.  One of the

issues they raised was the magistrate judge's denial of their request for leave to amend to assert

counterclaims against HPP and Cherokee Wells.  The Tenth Circuit rejected this argument and

held that the "district court properly denied leave to amend."[6]  Specifically, the Tenth Circuit

held that the fraud claims relied upon purely conclusory allegations that did not meet the

heightened pleading standard of "particularity" required by Fed. R. Civ. P. 9(b).  Thus, the Tenth

Circuit concluded that J.J.R. and Atkins' request for leave to amend to assert the fraud claims

---

[5] Case No. 09-1077-EFM, Doc. 234, p. 13.

[6] *Heavy Petroleum Partners, LLC v. Atkins ("Heavy Petroleum I")*, 457 F. App'x 735, 742 (10th Cir.
2012).

was futile because they were subject to dismissal under Fed. R. Civ. P. 12(b)(6).   J.J.R. and Atkins also asserted that the district court erred by granting summary judgment in favor of HPP and Cherokee Wells on the quiet title claim.  The Tenth Circuit agreed and concluded that the district court should not have quieted title in HPP and Cherokee Wells' favor, thereby remanding the action to the district court on this issue.

Upon remand to the district court, HPP and Cherokee Wells again sought summary judgment on the quiet title claim, which the district court denied.  On April 18, 2013, J.J.R. and Atkins filed a "Second Motion for Leave to Amend under Fed. R. Civ. P. 15 and Fed. R. Civ. P. 18 and Demand for Jury Trial."  J.J.R. and Atkins sought Leave to Amend their Answer to assert five counterclaims:   (1) fraud and concealment regarding compliance with the KCC rules required to protect the defendants' remaining interest in the lease; (2) fraud on the court through the Exhibit A contract with steam technology providers;  (3) fraud in the inducement through the operating agreement; (4) fraud on the court through the procurement of the order certifying the U.S. Marshal sale; and (5) fraud in the delivery of and taking of defendant Paul Atkins ownership in Leavenworth County Register of Deeds Book 808 page 237.[7]

The district court denied J.J.R. and Atkins' motion to amend because they were "woefully out of time."[8]  In that order denying leave to amend, the district court explained that the case was before it on a remand from the Tenth Circuit on the quiet title issue, that the district court had recently advised J.J.R. and Atkins that they cannot bring new claims, and that the only

---

[7] The proposed allegations in J.J.R. and Atkins' Second Motion for Leave to Amend in Case No. 09-1077 are substantially similar to the allegations in Plaintiff's Petition.

[8] Case No. 09-1077-EFM, Doc. 217, p. 1.

claims pending before the Court were those that the Tenth Circuit had vacated, reversed, and remanded.

On May 14, 2013, the district court presided over a bench trial on the quiet title claim, and on July 23, 2013, the district court awarded judgment in favor of HPP and Cherokee Wells and quieted title in their favor.  In the Memorandum and Order awarding judgment in favor of HPP and Cherokee Wells, the district court acknowledged that Atkins had recently raised the issue that when HPP executed upon its judgment, HPP allegedly improperly sold Atkins' personal interest in the Noll Lease.  The district court recognized that the sale was proper because J.J.R. and Atkins had not requested a stay of execution on the judgment or posted a supersedeas bond.

The district court agreed with HPP that the plain language of the Marshal's Deed stated that the execution applied only to property of J.J.R., but found that the plain language of the deed did not appear to resolve the factual question whether the property was in fact J.J.R.'s interest or Atkins' interest.  The district court also noted that the parties agreed that HPP had no right to execute on Atkins' personal property, and HPP specifically stated that it did not intend the Marshal's Deed to convey any interest owned by Atkins personally.  Thus, the district court framed the issue as a factual dispute as to whether the property on which HPP had executed was owned by J.J.R. or Atkins.  The district court gave the parties 60 days to reach an agreement about the title issue, and if they could not come to an agreement, the district court stated that it would appoint a special master to render a title opinion.

Atkins appealed to the Tenth Circuit a second time ("Second Appeal").[9]  J.J.R. and Atkins' Notice of Appeal stated that they sought review, among other things, of the district court's decision "not to [allow them to] amend their answer to include new counterclaims based on subsequent conduct and newly discovered fraud."[10]  Before taking that Second Appeal, however, J.J.R. and Atkins filed a Motion to Alter or Amend the Judgment under Federal Rule of Civil Procedure 59(e).  The district court denied that motion and refused to alter or amend the judgment.  It noted "one important caveat," however, about its previous statement that it had retained jurisdiction to determine whether HPP and Cherokee Wells improperly had executed on Atkins' personal ownership in a lease.[11]  The district court explained that J.J.R. and Atkins had stated in their Notice of Appeal to the Tenth Circuit that " '[t]he part of the order addressing defendant Atkins' personal ownership interest that was never before this court is not a remaining issue regarding the rights of the parties.' "[12]  Thus, the district court concluded that J.J.R. and Atkins had abandoned their claim about Atkins' personal ownership interest in the Noll Lease.  Consequently, the district court vacated its earlier assertion that it would appoint a special master to render a title opinion if the parties did not reach an agreement within 60 days on the title issue.

On September 2, 2014, the Tenth Circuit Court of Appeals issued its order on J.J.R. and Atkins' Second Appeal.[13]  With regard to the issue of the alleged impropriety of the district court

---

[9] Atkins states in his Petition that he took "a timely appeal from the Kansas U.S. District Court case which is now before the Tenth Circuit Court of Appeals." Plaintiff's Petition, Doc. 1-1, p. 5, ¶ 26.  The Tenth Circuit ruled on Atkins' appeal on September 2, 2014, as will be explained in further detail below.

[10] Case No. 09-1077-EFM, Doc. 237, p. 2, ¶ 8.

[11] *Id.* at p. 2, n. 5.

[12] *Id.* (quoting Notice of Appeal, Doc. 237, p. 1).

[13] *Heavy Petroleum Partners, LLC v. Atkins ("Heavy Petroleum II")*, 577 F. App'x 864 (10th Cir. Sept. 2, 2014).

not allowing them to amend their answer to include counterclaims of fraud, J.J.R. and Atkins apparently failed to brief issues with regard to the fraud claims to the Tenth Circuit.  J.J.R. and Atkins, however, briefed the Noll lease issue to the Tenth Circuit and claimed that the district court erred when it found in its Order denying J.J.R. and Atkins' Motion to Alter or Amend Judgment that they had abandoned the Noll lease issue.  In its Order, the Tenth Circuit pointed out that J.J.R. and Atkins "never filed a new notice of appeal or an amended notice of appeal relating to the denial of their Rule 59(e) motion," thus, the court lacked jurisdiction to consider any challenges to that ruling.[14]  The Tenth Circuit also stated that it

> lack[ed] jurisdiction over Defendants' arguments relating to the Noll lease issue because this was not identified as an issue subject to appeal in Defendants' notice of appeal.  Indeed, far from identifying this as an issue for appeal, Defendants affirmatively disavowed it, explicitly stating in their notice of appeal that this issue was "not a remaining issue regarding the rights of the parties."[15]

Accordingly, the Tenth Circuit only addressed the quiet title issue and ultimately affirmed the district court's memorandum and order quieting title in HPP and Cherokee Wells' favor.

Within this mass of facts and proceedings, Atkins filed his state court Petition on January 6, 2014, asserting fraud, fraud on the court, and conspiracy claims.   Atkins' filing prompted Defendants HPP, Cherokee Wells, Robert DeFeo, Jens Hansen, John Wesley Broomes, and Hinkle Law Firm LLC to file a Notice of Removal to federal court.[16]  These same six Defendants filed a Motion to Dismiss on February 19, 2014.  Defendant JAG filed an Answer on February

---

[14] *Id.* at 869.

[15] *Id.* at 869-70 (citations omitted).

[16] With regard to the five other named Defendants, Defendants JAG and Orr consented to the removal of the lawsuit to federal court.  There was no record of service of process on the three other Defendants (Ellis, Prometheus Petroleum, and Maclaskey Oilfield Services) and thus, their consent was not necessary for removal.  *See* 28 U.S.C. § 1446(b)(2)(A).

24, 2014.  The next day, Atkins filed a Motion to Remand the lawsuit to state court.  He also filed a Motion to Stay Proceedings (including the briefing on the Motion to Dismiss) until the resolution of Plaintiff's Motion to Remand.

On September 17, 2014, this Court ruled on the Motion to Remand and Motion to Stay Proceedings.  In this Order, the Court found that Plaintiff had fraudulently joined three non-diverse Defendants (John Broomes, Hinkle Law Firm, and Maclaskey).  Thus, the Court dismissed these Defendants, and the case remained in federal court.  In addition, the Court granted Plaintiff's request for stay but lifted the stay when it issued the Order.  Thus, the case was stayed from the filing of Plaintiff's motion on February 25, 2014, until September 17, 2014.  With regard to the six Defendants' pending Motion to Dismiss, the Court directed Defendants to file an amended brief by October 8, 2014.

On October 8, 2014, Defendants HPP, Cherokee Wells, Defeo, and Hansen ("the Heavy Petroleum Defendants") filed an Amended Motion to Dismiss (Doc. 27) to reflect the dismissal of two Defendants, as well as an accompanying memorandum.  In addition, on that same date, Defendant JAG filed a Motion for Judgment on the Pleadings (Doc. 25).  Instead of filing a response to these motions, Plaintiff filed an Amended Complaint on October 29, 2014.  Plaintiff filed his Amended Complaint stating that he filed it as a matter of right under Fed. R. Civ. P. 15(a)(1). Defendant JAG and the Heavy Petroleum Defendants filed Motions to Strike the Amended Complaint (Docs. 31, 33).   In response, Plaintiff filed a Motion for Leave to Amend Plaintiff's Complaint (Doc. 34).  The proposed Amended Complaint is identical to the one Plaintiff already filed on October 29, 2014.

In Plaintiff's proposed Amended Complaint, there are eight named Defendants.[17]   The six claims that Plaintiff asserted in his Petition remain.[18]   In the proposed Amended Complaint, Counts I through III appear identical to the prior Petition.   With regard to Count IV, Plaintiff includes several minor, additional factual allegations in the proposed Amended Complaint. Counts V and VI have several factual revisions in which Plaintiff omits his previous allegations against Defendant JAG and instead substitutes those allegations against Maclaskey   (although Maclaskey was previously dismissed from the case and Plaintiff does not name Maclaskey as a Defendant in the proposed Amended Complaint).   Plaintiff also proposes two new claims against JAG which include an action for accounting and a quiet title claim (Counts VII and VIII).   These two claims also relate to the Noll Lease.

In Plaintiff's proposed Amended Complaint, he also adds several additional allegations as to the alleged "timeliness" of his claims and the "procedural history" of the case.   The most significantly-added portion of Plaintiff's proposed Amended Complaint is the section in which Plaintiff alleges a "conspiracy" between numerous named Defendants and non-Defendants to "take Paul Atkins property in the express absence of jurisdiction by denying Atkins in their scheme to prevent Atkins from presenting evidence to a jury in vindication of his claims."[19]

---

[17] The omission of three Defendants apparently reflects the Court's dismissal of Broomes, Hinkle, and Maclaskey.

[18] Plaintiff states that his proposed Amended Complaint keeps the paragraph numbers the same as his state court Petition and that he simply adds new additions in bold and new decimal numbered additions.  The Court did not find this statement to be accurate.  Around Paragraph 145 of the proposed Amended Complaint, Plaintiff begins substituting different parties (i.e. Maclaskey for JAG), but he did not make these changes in bold.  Plaintiff also apparently omitted a paragraph number which then entirely changed the numbering system.

[19] Proposed Amended Complaint, Doc. 34-2, p. 18.  These allegations are not set forth under Count VI, his conspiracy claim, but rather they are background factual allegations.  Several of Plaintiff's allegations are demonstrably false because they assert alleged factual averments against the undersigned Judge. These allegations include that Broomes and the undersigned drove to the trial in Topeka for the first action against Atkins from

There are currently seven matters before the Court.[20]   The Court will first address Defendants' Motions to Strike Plaintiff's Amended Complaint in Section II of this Order.   In Section III, the Court will address the Heavy Petroleum Defendants' Motion to Dismiss and Defendant JAG's Motion for Judgment on the Pleadings in conjunction with Plaintiff's Motion for Leave to Amend Plaintiff's Complaint.   Finally, in Section IV, the Court will address the remaining issues in the case.

## II.   Defendants' Motions to Strike Plaintiff's Amended Complaint

Plaintiff filed an Amended Complaint on October 29, 2014, stating that he filed it as a matter of right under Fed. R. Civ. P. 15(a)(1).   Defendant JAG and the Heavy Petroleum Defendants move to strike Plaintiff's Amended Complaint contending that it is untimely and cannot be filed as a matter of right.

Federal Rule of Civil Procedure 15(a)(1) provides

A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is

---

Wichita in the same automobile and the exchange of baked goods.  *Id.* at p. 18, ¶¶ 64.2, 64.3. These allegations are not true.

   Other allegations appear completely irrelevant to the case at hand.   These allegations include that "President George W. Bush's unconstitutionally installed US Attorney for the Western District of Missouri, the Kansas attorney Bradley Schlozman was determined by the USDOJ Inspector General to have repeatedly testified falsely to the US Senate Judiciary Committee." *Id.* at p. 18, ¶ 64.5.  Plaintiff also alleges that Defendants engaged in a "corrupt scheme" to distract Plaintiff's counsel from obtaining appellate review of Noll Lease issues and makes incoherent allegations regarding a case involving Plaintiff's counsel that was decided by the Tenth Circuit approximately six years ago.  *Id.* at pp.18-20, ¶¶ 64.7-64.13.

   [20] With regard to six issues in this Order, Atkins' previous counsel, Ira Dennis Hawver, submitted the briefing on these issues.  While these matters were being briefed to this Court, the Kansas Supreme Court disbarred Mr. Hawver.  *See In re Hawver*, 339 P.3d 573 (Kan. Nov. 14, 2014).  On December 5, 2014, Mr. Hawver filed a Motion to Withdraw as Counsel of Record for Plaintiff Atkins noting that he had been disbarred by the Kansas Supreme Court and had been placed on an interim suspension by the United States District Court for the District of Kansas.  The Court granted Mr. Hawver's motion (Doc. 41).  On December 19, 2014, the Court held a telephone conference with Plaintiff Atkins and Defendants' counsel.  In this conference, the Court allowed Atkins additional time to find new counsel but informed him that the Court would continue working on the matters currently pending before the Court.  Mr. Atkins recently filed a Motion to Appoint Counsel (Doc. 45).  The Court will address Mr. Atkin's motion below.

required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.[21]

For purposes of this Order, the Court will only consider the 21 day timeframe under Fed. R. Civ. P. 15(a)(1) from the filing of Defendant JAG's Answer.[22]  On February 24, 2014, JAG served its Answer to Plaintiff's petition, and the twenty-one day timeframe under Fed. R. Civ. P. 15(a)(1) began. The next day, Plaintiff filed a Motion to Stay Deadlines pending the resolution of his remand motion.  The Court ultimately granted this stay and this stay was in effect from February 25, 2014, through September 17, 2014.  Accordingly, the Court does not consider those dates as part of the 21 day period.  On September 17, the Court lifted the stay that had been in place. Thus, the 21 day time period under Fed. R. Civ. P. 15(a)(1) began again, and Plaintiff's twenty-one day period expired on October 8, 2014.

Plaintiff did not seek to amend his complaint as a matter of course prior to October 8 but instead waited until October 29, 2014, to file an Amended Complaint.  Thus, measuring the timeframe from JAG's Answer, Plaintiff's Amended Complaint is untimely under Fed. R. Civ. P. 15(a)(1) and could not be filed as a matter of right.   Accordingly, the Court grants Defendants' Motions to Strike Plaintiff's Amended Complaint (Docs. 31, 33).[23]

---

[21] Fed. R. Civ. P. 15(a)(1)(A)-(B).

[22] Six Defendants filed a Motion to Dismiss on February 19, 2014, which presumably started the 21 day period.  *See* Fed. R. Civ. P. 15(a)(1)(B) (allowing amendment once as a matter of course within 21 days "after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) . . . , whichever is earlier"); *see also* Fed. R. Civ. P. 15 advisory committee's note (noting that the twenty-one day time period is not cumulative; *Trujillo v. City of Newton, Kan.*, 2013 WL 535747, at *1 (D. Kan. Feb. 12, 2013) (finding that the plaintiff's amended complaint was improperly filed more than 21 days after the first defendant filed its answer). Defendants, however, filed an Amended Motion to Dismiss on October 8, 2014.  The Court finds it unnecessary to consider the circumstances surrounding Defendants' Motion to Dismiss and whether the Amended Motion to Dismiss potentially re-started the 21 day timeframe because Defendant JAG's Answer filed on February 24, 2014, conclusively started the 21 day timeframe.

[23] To the extent that Plaintiff requests the Court to construe the Amended Complaint as a timely "response" to Defendant JAG's Motion for Judgment on the Pleadings and the Heavy Petroleum Defendants' Motion to Dismiss, the Court will not do so because the document was filed as an "Amended Complaint."  Because Plaintiff

**III.    JAG's Motion for Judgment on the Pleadings (Doc. 25), the Heavy Petroleum Defendants' Amended Motion to Dismiss for Failure to State a Claim (Doc. 27), and Plaintiff's Motion for Leave to Amend Plaintiff's Complaint (Doc. 34)**

Five Defendants (the Heavy Petroleum Defendants and JAG) seek dismissal of Plaintiff's claims against them.[24]   These five Defendants contend that Plaintiff's claims fail for numerous reasons.   Instead of filing responses to these motions, as noted above, Plaintiff filed an Amended Complaint.   After Defendants moved to strike Plaintiff's Amended Complaint, he filed a Motion for Leave to Amend Plaintiff's Complaint.[25]   Defendants contend that Plaintiff's Motion for Leave to Amend his Complaint should be denied because his proposed amendments and claims are untimely, futile because Plaintiff still cannot state a claim for relief, and are brought in bad faith.   The Court will first set forth the legal standard.   The Court will then discuss the viability of the claims with regard to the Heavy Petroleum Defendants, and, afterwards, the Court will then discuss Defendant JAG.

---

also filed a Motion for Leave to Amend Plaintiff's Complaint (attaching as the proposed Amended Complaint the same Amended Complaint he previously filed), the Court has the benefit of his "arguments" against dismissal in that document.

[24]   There are three additional named Defendants, and the Court will address these Defendants below in Section IV.

[25]   Defendants contend that because Plaintiff did not file a response to the Motion for Judgment on the Pleading and the Amended Motion to Dismiss that their motions are unopposed and should be granted pursuant to D. Kan. Rule 7.4(b).   This rule provides that "[a]bsent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum.   If a responsive brief or memorandum is not filed within the Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion.   Ordinarily, the court will grant the motion without further notice."

Although the motions were not timely opposed, "a district court may not grant a motion to dismiss for failure to state a claim merely because a party failed to file a response. . . . [E]ven if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted."   *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (quotation marks and citation omitted).   Accordingly, the Court must consider whether Plaintiff states a claim even though he failed to timely respond to Defendants' motions.

## A.  Legal Standards

### 1.  Motion to Dismiss

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[26]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[27]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[28]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests.[29]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[30]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[31]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[32]

---

[26]  Fed. R. Civ. P. 12(b)(6).

[27]  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

[28]  *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[29]  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.").

[30]  *Iqbal*, 556 U.S. at 678-79.

[31]  *See id.* at 678. ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

[32]  *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

-14-

2. *Judgment on the Pleadings*

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed as long as the motion is made early enough not to delay trial.[33] The standard for dismissal under Rule 12(c) is the same as a dismissal under Rule 12(b)(6).[34] So to survive a motion for judgment on the pleadings, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[35] All reasonable inferences from the pleadings are granted in favor of the non-moving party.[36] Judgment on the pleadings is appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[37] Documents attached to the pleadings are exhibits and may be considered in deciding a Rule 12(c) motion.[38] A court "may take judicial notice of pleadings in prior cases without converting that motion to one for summary judgment."[39]

---

[33] Fed. R. Civ. P. 12(c).

[34] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

[35] *Twombly*, 550 U.S. at 555.

[36] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012).

[37] *Id.* (quotations marks and citation omitted).

[38] *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006).

[39] *Tal v. Hogan*, 453 F.3d 1244, 1264-65 n.24 (10th Cir. 2006) (citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004). *See also Merswin v. Williams Cos., Inc.*, 364 F. App'x 438, 441 (10th Cir. 2010) (stating that "[i]t is settled that the district court can take judicial notice of its own decision and records in a prior case involving the same parties" and noting that the district court did not err when it did not convert a motion to dismiss to one for summary judgment because the court could "take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact.") (citing *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006)).

### 3. Leave to Amend under Fed. R. Civ. P. 15(a)(2)

Under Federal Rule of Civil Procedure 15(a)(2), once a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[40]  Rule 15(a)(2) provides that courts should "freely give leave when justice so requires."[41]  A court, however, may refuse to grant leave to amend based upon "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[42]  With regard to futility, the court must analyze the proposed amendment as though it was before the court on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[43]

## B. The Heavy Petroleum Defendants

The proposed Amended Complaint does not contain any additional claims against these four Defendants.  Instead, it only contains some additional alleged factual assertions that attempt to rebut Defendants' reasons for dismissal.  Thus, the Court will address both the allegations in the Petition and the proposed Amended Complaint together with regard to the Heavy Petroleum Defendants.[44]

---

[40] Fed. R. Civ. P. 15(a)(2).

[41] *Id.*

[42] *Duncan v. Manager, Dep't of Safety, City & Cnty. Of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quotation marks omitted).

[43] *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992).

[44] As noted above, the Heavy Petroleum Defendants include HPP, Cherokee Wells, Hansen, and Defeo.  It appears that Counts I through V are only specifically asserted against HPP and Cherokee Wells.  Count VI, the conspiracy claim, is asserted against multiple Defendants (including HPP, Cherokee Wells, Hansen, and Defeo).  Counts II, III, and V, however, do include references to Defeo. And Count III includes several references against Hansen.  To the extent that Plaintiff is potentially asserting these claims against Defeo and Hansen, the Court's analysis above applies equally to these Defendants.

1.   *Count I through III (Allegations related to the Zachariah Lease)*

a.   *Count I*

In Count I, Plaintiff alleges that HPP and Cherokee Wells engaged in fraud in 2006 when they allegedly made false misrepresentations to the Kansas Corporation Commission ("KCC") that well 2-84 (on the Zachariah Lease) was suitable for salt water disposal.  In addition, Plaintiff alleges that HPP and Cherokee Wells made misrepresentations in filings with the court and in communications with Atkins and J.J.R. that HPP and Cherokee Wells were operating the Zachariah Lease in compliance with the operating agreement.  Plaintiff also asserts that "Paul Atkins and JJR of Kansas Limited were foreseeably injured when the KCC ordered well 2-84 closed."[45]

Both Fed. R. Civ. P. 17(a) and K.S.A. § 60-217(a) require that "[a]n action must be prosecuted in the name of the real party in interest."  A federal court sitting in diversity must look to state law to determine whether a plaintiff is the real party in interest.[46]   Under Kansas law, the real party in interest is the one who, by virtue of the substantive law, holds the right sought to be enforced.[47]

All of the allegations contained in Count I through Count III relate to the Zachariah Lease, which is owned by J.J.R.  Because J.J.R is the owner of the Zachariah Lease, J.J.R. would be entitled to any recovery regarding this lease.  Plaintiff attempts to argue in his proposed Amended Complaint that he is the real party in interest because he "is an interest holder in JJR"

---

[45] Plaintiff's Petition, Doc. 1-1, p. 17, ¶ 89; Plaintiff's Proposed Amended Complaint, Doc. 34-2, p. 27, ¶ 89.

[46] *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1153 (10th Cir. 1985) (citations omitted).

[47] *Ryder v. Farmland Mut. Ins. Co.*, 248 Kan. 352, 366, 807 P.2d 109, 118 (1991) (citing 3A James Wm. Moore *et al.*, *Moore's Federal Practice* § 17.02 (2d ed. 1970)).

-17-

and receives payments from J.J.R.[48]   A shareholder of a corporation, however, is not the real party in interest to obtain redress for injuries to the corporation.[49]   Thus, J.J.R. holds the right that Count I through Count III seeks to enforce, and Atkins is not the real party in interest for those claims.

In addition, with regard to Count I, Plaintiff fails to state a claim as he fails to adequately allege fraud.  A fraud claim requires

> false statements [that] were made as a statement of existing and material fact; (2) the representations were known to be false by the party making them or were recklessly made without knowledge concerning them; (3) the representations were intentionally made for the purpose of inducing another party to act upon them: (4) the other party reasonably relied and acted upon the representations made; and (5) the other party sustained damage by relying upon them.[50]

A key element of a fraud claim is a misrepresentation made *to the injured party*.[51]   A fraud claim is not actionable if the misrepresentation was made to a third party.[52]   Furthermore, K.S.A. § 60-209(b) requires that a party alleging fraud "must state with particularity the circumstances constituting the fraud . . . .  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  The failure to allege fraud with particularity compels dismissal of the claim.[53]   Indeed, Atkins is aware of this heightened pleading standard under the analogous

---

[48] Plaintiff's Proposed Amended Complaint, Doc. 34-2, p. 11, ¶ 30.

[49] *See, e.g., Schrag v. Dinges*, 825 F. Supp. 954, 958 (D. Kan. 1993). The Court also notes that Plaintiff's position is contrary to his previous position in which Atkins argued that the Court should not disregard J.J.R.'s existence to impose personal liability upon Atkins.  *See* Doc. 1-6, pp. 22-25.

[50] *Kelly v. VinZant*, 287 Kan. 509, 515, 197 P. 3d 803, 808 (2008).

[51] *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 532, 739 P.2d 444, 450 (1987) ("The injured party must have been deceived by, and have relied upon, the defendant's misrepresentations in order to recover damages for fraud.").

[52] *Ayalla v. Southridge Presbyterian Church*, 37 Kan. App. 2d 312, 319-20, 152 P.3d 670, 676 (2007).

[53] *See Palmer v. Brown*, 242 Kan. 893, 901, 752 P.2d 685, 690 (1988); *Newcastle Homes, LLC v. Thye*, 44 Kan. App. 2d 774, 789, 241 P.3d 988, 999 (2010).

-18-

federal rule, Fed. R. Civ. P. 9(b).   The Tenth Circuit affirmed the order denying J.J.R. and Atkins' request for leave to amend to assert fraud claims in the First Lawsuit because they were not pleaded with particularly, and thus the fraud claims were subject to dismissal under Fed. R. Civ. P. 12(b)(6).

In this case, Plaintiff alleges that HPP and Cherokee Wells made false representations of material fact to the KCC.  Because those alleged misrepresentations were made to a third party, Plaintiff fails to state claim of fraud.  To the extent that the claim could be construed to allege false statements made to Plaintiff, there are no particular allegations as to when false statements were made to Plaintiff or when Plaintiff relied upon such misrepresentations.  The only particular misrepresentation raised by Plaintiff is the alleged misrepresentation to the KCC (a third party), and this event allegedly occurred in 2006.  Accordingly, Count I fails to state a claim for relief.

*b.  Count II*

Plaintiff alleges in Count II that HPP and Cherokee Wells were parties to a fraud on the court in the First Lawsuit by filing a contract with the Court about steam technology providers.[54] Plaintiff asserts that the filing of this contract caused Plaintiff and J.J.R. to lose "the use and enjoyment of the Zachariah Lease along with the oil production royalty revenue from their ownership interest and operation of the lease . . . ."[55]  As noted above, Plaintiff is not the real party in interest in Count II because it relates to J.J.R.'s interest in the Zachariah Lease.

In addition, Count II fails because Plaintiff does not sufficiently allege a claim for fraud on the court.  The Kansas Court of Appeals has defined fraud on the court as " 'fraud which is

---

[54] The "contract" that Plaintiff specifically references in this claim is simply a one-page exhibit that was attached to a contract.

[55] Plaintiff's Petition, Doc. 1-1, p. 21, ¶ 105; Plaintiff's Proposed Amended Complaint, Doc. 34-2, p. 30, ¶ 105.

directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury.' ”[56]

> Only particularly egregious conduct—such as the fabrication of evidence or the bribery of the judge or the jury—has been found to support a finding of fraud on the court.  In other words, to prevail on a claim of fraud on the court, one must normally show a deliberate scheme to corrupt or subvert the basic function of the judiciary, which is the impartial adjudication of cases.[57]

When analyzing fraud on the court claims, Kansas courts look to federal courts for guidance.[58] Fraud on the court "requires a showing that one has acted with an intent to deceive or defraud the court."[59]   In other words, there must "be a showing of conscious wrongdoing—what can properly be characterized as a deliberate scheme to defraud—before relief from a final judgment is appropriate" for a fraud on the court.[60]  And as noted above, K.S.A. § 60-209 requires fraud to be pled with particularity.

With regard to Count II, Atkins alleges that HPP and Cherokee Wells (using Hinkle and Broomes as their agents) "filed" the steam technology contract with the court and "used [it] as an evidentiary exhibit."[61]   There are no allegations that HPP and Cherokee Wells intended to deceive the Court or defraud the Court by submitting the contract as an evidentiary exhibit. Indeed, Atkins alleges that these documents and misrepresentations were used to deceive Atkins.

---

[56] *J-F Oil LLC v. Lansing Energy Corp.,* 2005 WL 742073, at *5 (quoting *Weese v. Schukman*, 98 F.3d 542, 552 (10th Cir. 1996)) (emphasis omitted); *see also Boldridge v. Nat'l City Bank*, 313 P.3d 837, 2013 WL 6389341, at *3 (Kan. App. Dec. 6, 2013) ("Fraud between the parties, perjury, and the nondisclosure of pretrial discovery does not generally amount to fraud on the court.") (citations omitted).

[57] *Boldridge*, 2013 WL 6389341, at *3.

[58] *Id.* (citing *Cool v. Cool*, 203 Kan. 749, 755-56, 457 P.2d 60, 66 (1969); *J–F Oil*, 2005 WL 742073, at *4).

[59] *Robinson v. Audi Atkiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995).

[60] *Id.*

[61] Doc. 1-1, pp. 18-19, ¶¶ 94–95; Doc. 34-2, pp. 18-19, ¶¶ 94-95.

Furthermore, there are no allegations that HPP and Cherokee Wells' attorney knew that this document was false as required to state a claim for fraud on the court.[62]   As noted above, fraud on the court requires intent to deceive the court and is not fraud between the parties or fraudulent documents.   Atkins includes no such allegations in his fraud on the court claim in Count II. Thus, Plaintiff fails to state a claim in Count II.

### c.   Count III

In Count III, Atkins asserts that HPP and Cherokee Wells committed fraud by entering into an operating agreement with Atkins and J.J.R. knowing that they would not perform the promises made to Atkins and J.J.R.[63]   Atkins alleges that HPP and Cherokee induced him to enter into an operating agreement by making alleged misrepresentations that oil production on the Zachariah Lease would be increased through steam injection technology and thus obtained Atkins' ownership interest wrongfully.   Atkins states that he and J.J.R. were damaged because he and J.J.R. lost revenues, the use and enjoyment, and property rights from the oil production on the Zachariah Lease.   Again, as noted above, Atkins is not the real party in interest for this claim

---

[62] *See O'Dell v. Sun Ref. & Mktg. Co.*, 210 F.3d 390, 2000 WL 339181, at *4 (10th Cir. 2000) (stating that "[a]lleging that the nondisclosure was accomplished with the 'aid and assistance' of defendant's attorneys or 'through' defendant's attorneys or via wrongful objections to discovery, is not sufficient to assert the kind of egregious misconduct necessary to state a claim of fraud on the court.").

[63] The "operating agreement" referenced throughout the Petition and the proposed Amended Complaint is part of a contract, the Farmout Agreement ("the Farmout"), which was at issue in the Prior Lawsuit.  The Farmout is a contract between HPP and J.J.R, and this contract includes a Model Form Operating Agreement (referred to in the previous lawsuit as the Joint Operating Agreement or JOA).  It appears as though Plaintiff is referencing the JOA as the operating agreement.
    The Court notes that in J.J.R. and Atkins' First Appeal to the Tenth Circuit, they argued that the JOA was not a valid and binding contract.  The Tenth Circuit dismissed this argument finding that J.J.R. and Atkins had waived the issue because they (1) admitted in their answer that the JOA was included with the Farmout agreement, (2) stipulated in the Pretrial order that the Farmout agreement included the JOA, and (3) never raised an objection to the JOA in the district court.  *Heavy Petroleum I*, 457 F. App'x at 741.

because J.J.R. is the owner of the Zachariah Lease, and J.J.R. would be entitled to any recovery regarding this lease.

Plaintiff also fails to allege with particularity any fraudulent misrepresentations. Notwithstanding Plaintiff's failure to allege fraud with particularity, Count III also fails on the basis of collateral estoppel.  "Federal law governs the scope of preclusive effect given to federal-court decisions."[64]  "Collateral estoppel, or issue preclusion, means that once an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[65]  Collateral estoppel "aims to promote judicial efficiency, encourage reliance on previously adjudicated matters, and avoid inconsistent rules of decision."[66]  There are four elements to consider under issue preclusion:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[67]

With regard to the first element of whether the previous issue and the current issue are identical, some of the questions to consider include the following.

> Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?  Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? How closely related are the claims involved in the two proceedings?[68]

---

[64] *Stan Lee Media v. Walt Disney Co.*, --- F.3d. ---, 2014 WL 7271442, at *4 (10th Cir. Dec. 23, 2014).

[65] *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997) (quotations marks and citation omitted).

[66] *Stan Lee Media*, 2014 WL 7271442, at *4.

[67] *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006) (quotation omitted).

[68] *Id.* at 663.

Element one is met in this case because the issue was previously decided in the First Lawsuit as Atkins repeatedly argued that HPP and Cherokee Wells wrongfully obtained his interest in the Zachariah Lease.  In the First Lawsuit, Atkins and J.J.R. argued that "the Farmout required HPP to establish actual production of commercial quantities of oil due solely to steam injection in order for HPP to earn the assignment [of J.J.R.'s interest]."[69]  The Court found that the language in the contract did not support Atkins' contention.[70]  The Court found that HPP complied with the requirements of the contract and quieted title in HPP's favor.  Accordingly, the central issue in the First Lawsuit was the validity of HPP obtaining its interest in the Zachariah Lease.  Thus, the first element of issue preclusion is met.

As to the second element of issue preclusion, it is met in several ways.  First, Atkins tried to amend his counterclaim to assert fraud claims against HPP and Cherokee specifically relating to alleged misrepresentations about steam injection technology.  The Court denied Atkins' motion finding that amendment would be futile, and the Tenth Circuit affirmed this finding.[71]  A dismissal for "failure to plead a viable cause of action is a decision on the merits."[72]   In any event, the case also proceeded to a bench trial in which the Court addressed HPP's interest in the Zachariah Lease and whether HPP lawfully obtained that interest.  The Court quieted title in

---

[69] Doc. 234, p. 8.

[70] *See* Doc. 234.  In addition, the Court found that even if the Farmout had required increased oil production due solely to steam injection recovery, Atkins waived this requirement because he was fully aware that steam injection did not commence until after he made his assignment.

[71] *Heavy Petroleum I*, 457 F. App'x at 741-42.

[72] *Stan Lee Media*, 2014 WL 7271442, at *5 (citations omitted).

HPP's favor, and this decision was also upheld by the Tenth Circuit.  Accordingly, the prior action was fully adjudicated on the merits.

The third and fourth elements are also met.  Atkins, as a party to the First Lawsuit, asserted that HPP and Cherokee Wells had wrongfully obtained his (or J.J.R.'s) right to the Zachariah Lease.  Thus, Atkins had the full and fair opportunity to litigate the issue, and as noted above, the issue was indeed litigated.  Accordingly, Atkins fails to state a claim for relief in Count III, and collateral estoppel bars this claim.

2. *Count IV through VI (Allegations related to the Noll Lease)*

a. *Count IV*

In Count IV in the Petition, Atkins claims that HPP and Cherokee Wells committed fraud on the court by procuring an order certifying the Marshal's sale of an interest in the Noll Lease that Atkins claims he owns.  Similar to the failures noted above with regard to Atkins' alleged fraud on the court claim in Count II, he fails to sufficiently allege fraud on the court in Count IV. Atkins fails to allege that HPP and Cherokee Wells knew that the Marshal's sale was fraudulent or that they intended to deceive the district court by filing a motion to confirm that sale.  Instead, Atkins simply alleges that Broomes, as an agent of HPP and Cherokee Wells, filed documents that were allegedly false.  Atkins makes no specific allegations and fails to allege with particularity any intent to deceive the court. Thus, he fails to state a claim in the Petition.

With regard to the proposed Amended Complaint, Atkins attempts to assert several new factual allegations in Count IV specifically against Broomes and Hinkle (who were previously dismissed from the case).  Plaintiff contends that Broomes and Hinkle made intentional misrepresentations on behalf of HPP and Cherokee Wells at a confirmation hearing before the Court, on November 3, 2011, regarding an execution sale conducted by the United States

-24-

Marshal on property belonging to J.J.R.    Even if the allegations in the proposed Amended Complaint could be construed to assert with particularity intentional misrepresentations to the Court, Plaintiff's claim still fails.

When bringing an independent fraud on the court claim, the party seeking relief should not find himself in the situation "due to his own fault, neglect or carelessness."[73]   That is exactly the case here.   Atkins asserts in Count IV that Defendants committed fraud on the court when they obtained an order certifying the Marshal's sale on an interest in the Noll lease, which Atkins claims to own.   Atkins raised this argument in the First Lawsuit, and the Court acknowledged that there could be a factual dispute over whether the property conveyed was owned by Atkins or J.J.R.   But J.J.R. and Atkins abandoned this issue.   When they filed a Notice of Appeal in their Second Appeal with the Tenth Circuit, they stated that Atkins' personal ownership interest was no longer a remaining issue in the case.   Consequently, any hardship Atkins sustained was caused by his decision not to pursue the title issue in the district court or his failure to properly raise the issue before the Tenth Circuit.[74]

---

[73] *See Winfield Assoc., Inc. v. Stonecipher*, 429 F.2d 1087, 1090 (10th Cir. 1970) (stating that when bringing an independent fraud on the court claim, the party seeking relief should not find himself in the situation "due to his own fault, neglect or carelessness.").

[74] As noted above, J.J.R. and Atkins apparently tried to bring the Noll Lease issue up to the Tenth Circuit on their Second Appeal despite explicitly abandoning it at the district court a few months earlier.   In the Tenth Circuit's Order, the court stated that it "lack[ed] jurisdiction over Defendants' arguments relating to the Noll lease issue because this was not identified as an issue subject to appeal in Defendants' notice of appeal.   Indeed, far from identifying this as an issue for appeal, Defendants affirmatively disavowed it, explicitly stating in their notice of appeal that this issue was 'not a remaining issue regarding the rights of the parties.' " *Heavy Petroleum II*, 577 F. App'x at 869 (citations omitted).   Plaintiff is in the situation he is in with regard to the Noll Lease due to his own fault, neglect, or carelessness.

Furthermore, Plaintiff's claim is barred by res judicata.  "The doctrines of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are closely related."[75] Under res judicata,

> a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.  Under Tenth Circuit law, claim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.[76]

With regard to the identity of the cause of action, the Tenth Circuit has adopted a "transactional approach" in that "a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence."[77]

The first element is met as there was a final judgment on the merits in the First Lawsuit. The second element is also met.  HPP, Cherokee Wells, and Atkins were all parties to the First Lawsuit.  Thus, there is an identity of the parties.  Finally, there is an identity of the cause of action in both suits.  In the First Lawsuit, Plaintiff sought leave to include fraud claims relating to the ownership of the Noll Lease.  Indeed, Plaintiff tries to assert the same claims as he did before.  And although this Court did not allow Plaintiff to amend his counterclaim to specifically assert those claims, this Court still allowed Plaintiff to present the Noll Lease issue.  Specifically, this Court gave Plaintiff time to present the issue at the bench trial.  When Plaintiff failed to discuss the Noll Lease during the bench trial, this Court allowed Plaintiff to submit briefing on the Noll Lease issue.  This Court then stated in its July 23, 2013, Order in the First Lawsuit that if the parties could not come to an agreement on the Noll Lease issue within 60 days, this Court

---

[75] *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990).

[76] *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008) (quotation marks and citations omitted).

[77] *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) (citation omitted).

would appoint a special master to render a title opinion.  Instead of allowing the Court to resolve the Noll Lease issue, Plaintiff abandoned it when he appealed to the Tenth Circuit.  In his Second Appeal to the Tenth Circuit, Plaintiff also did not appeal this Court's order denying his Motion to Alter or Amend and did not appeal the Court's Order confirming the execution sale of the Noll Lease.  Thus, res judicata precludes Plaintiff from relitigating the issue that he could have brought and had resolved in the First Lawsuit. Accordingly, Plaintiff fails to state a claim for relief in Count IV.

> b.  *Count V*

In Count V, Plaintiff alleges that HPP and Cherokee Wells committed fraud in the delivery and taking of Plaintiff's personal ownership in the oil and gas lease recorded at Book 808, Page 237 in the Leavenworth County Register of Deeds.  Plaintiff fails to state a claim as he does not adequately allege fraud.  As noted above, a key element of a fraud claim is a misrepresentation made *to the injured party*.[78]  In this case, Plaintiff does not allege that any misrepresentations or untrue statements were made *to him*.  Instead, he alleges that fraudulent misrepresentations were made to third parties.  Thus, he fails to adequately allege a fraud claim.

Furthermore, res judicata also bars this claim.  This claim relates to Plaintiff's alleged interest in the Noll Lease, and, as noted above, Plaintiff had the opportunity to litigate the Noll Lease issue in the First Lawsuit.  Accordingly, Plaintiff fails to state a claim for relief in Count V, and this claim is barred by res judicata.

---

[78] *Slaymaker*, 241 Kan. at 532, 739 P.2d at 450.

### c. Count VI

Finally, in Count VI, Plaintiff asserts a conspiracy claim.  This claim alleges that Defendants conspired "to defraud oil lease operators and owners" and "to seize the ownership in JJR's leases through fraud."[79]   In Kansas, "the elements of a civil conspiracy include:  (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."[80]   "Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy."[81]   In Count VI, there are no allegations of a valid, underlying cause of action independent of the conspiracy.  Furthermore, all of the previous causes of action (Counts I through V) fail to state a claim and thus they cannot be the underlying independent action.[82]   Accordingly, Atkins' conspiracy claim fails because there are no valid, underlying causes of action.

In sum, Plaintiff fails to state a claim against the Heavy Petroleum Defendants in his Petition and cannot state a claim in the proposed Amended Complaint.  Thus, Plaintiff's request to file an Amended Complaint would be futile.  Accordingly, this Court grants the Heavy Petroleum Defendants' Amended Motion to Dismiss (Doc. 27) and denies Plaintiff's Motion to Amend Complaint (Doc. 34).

---

[79] Plaintiff's Petition, Doc. 1-1, pp. 30-31, ¶¶ 154-55; Plaintiff's proposed Amended Complaint, Doc. 34-2, p. 44, ¶¶ 153-54.

[80] *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153, 161 (1984) (quotation marks and citation omitted).

[81] *Id.* at 967, 678 P.2d at 161.

[82] This Court notes that Counts I, II, and III all relate to the Zachariah lease.  Because Atkins is not the real party in interest with regard to this lease, these counts could not form the basis for his conspiracy claim.

## C.  Defendant JAG

With regard to Defendant JAG, the Court will address the Petition first and then address the proposed Amended Complaint.

### 1.  Petition

The only claim expressly asserted against Defendant JAG in Plaintiff's Petition is a conspiracy claim (Count VI).  This claim alleges that Defendants conspired "to defraud oil lease operators and owners" and "to keep Paul Atkins' proceeds from the oil sold off the Noll Lease even though JAG [] and the conspirators knew the lease was obtained through fraud . . . ."[83]  As noted above, a conspiracy claim is not actionable without the "commission of some wrong giving rise to a cause of action independent of the conspiracy."[84]  There are no underlying wrongs that could be applicable as all of the claims fail to state a claim for relief.[85]  Accordingly, Plaintiff fails to state a claim against JAG in the Petition.

### 2.  Proposed Amended Complaint

In Plaintiff's proposed Amended Complaint, he abandons Counts V and VI with regard to JAG.[86]  Instead, Plaintiff asserts two different claims against JAG.  He asserts an "action for accounting" (Count VII) and an "action for quiet title" (Count VIII).

---

[83] Doc. 1-1, pp. 30-31, ¶¶ 154, 161.

[84] *Stoldt*, 234 Kan. at 967, 678 P.2d at 161.

[85] The Court notes that the only underlying wrong in the Petition that could *potentially* be applicable to Plaintiff's conspiracy claim against JAG is the fraud claim in Count V.  And although JAG is mentioned in Count V, there are no allegations that JAG engaged in fraud.  Thus, Plaintiff also does not plead an underlying wrong against JAG.

[86] Plaintiff's Proposed Amended Complaint omits allegations against JAG in Count V.  With regard to Count VI, Plaintiff omits JAG from the "conspiracy" title, and all of the allegations previously asserted against JAG are now asserted against Maclaskey.

Defendant JAG contends that although Plaintiff re-characterizes his claims against JAG, the claims still rest on the same fundamental principle that Plaintiff's interest in the Noll Lease was fraudulently taken.  JAG argues that because Plaintiff's claims regarding the Noll Lease are barred by res judicata, Plaintiff's proposed new claims, derivative from the Noll Lease fraud claims, are also barred.  The Court agrees.  Both of Plaintiff's proposed new claims are premised on Plaintiff's theory that his interest in the Noll Lease was obtained unlawfully through fraud. As noted above, res judicata bars these claims.[87]  Thus, Plaintiff's proposed new claims based regarding the Noll Lease and the alleged fraud are also barred by res judicata.

In sum, Plaintiff fails to state a claim for relief against Defendant JAG in his Petition. And amendment of Plaintiff's Petition to allege new claims against JAG would be futile because those claims would be subject to dismissal under Fed. R. Civ. P. 12(b)(6).  Thus, this Court grants Defendant JAG's Motion for Judgment on the Pleadings (Doc. 25) and denies Plaintiff's Motion to Amend Complaint (Doc. 34).

## IV.     Remaining Matters and Defendants in the Case

### A.  Three Remaining Defendants

#### 1.  *Defendants Arden Ellis and Prometheus Petroleum*

With regard to Defendants Arden Ellis and Prometheus Petroleum, LLC, there is no evidence in the record that these two Defendants were served with the Petition.  Federal Rule of Civil Procedure 4(m) provides

---

[87] Although JAG was not a party to the First Lawsuit, res judicata is applicable if there is an identity of parties or privies in the two suits. *See Pelt*, 539 F.3d at 1281. "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Id.* (quotation marks and citation omitted).  JAG is in privity with HPP because it purchased HPP's interest in the Noll Lease.  *See* Case No. 09-1077, Doc. 229-5.  Generally, "successors and assigns to a property interest are often considered sufficiently 'in privity' for preclusion purposes." *Entek GRB, LLC v. Stull Ranches, LLC*, 763 F.3d 1252, 1259 (10th Cir. 2014).

> Time Limit for Service.  If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

This case was filed approximately one year ago.  Thus, these Defendants were not effectively served within the timeframe of Fed. R. Civ. P. 4(m).[88]  Accordingly, the Court dismisses the action without prejudice against these two Defendants.[89]

### 2. *Defendant David Orr*

As to Defendant David Orr, he was served, and Orr, acting as a pro se Defendant, filed a "Response to Summons."[90]  In this response, Orr disputes Plaintiff's claims against him.  Orr, however, did not file a "motion to dismiss."  The Court will nevertheless address the claims asserted against Defendant Orr.

Although sua sponte dismissals are not favored, "a sua sponte dismissal under Rule 12(b)(6) is not reversible error when it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile."[91]  Both circumstances are present in this case.  It appears that only Count VI, the conspiracy claim,

---

[88] The Court recognizes that the case was stayed for approximately six months in 2014.  Even taking into account that stay, the 120-day time period in Fed. R. Civ. P. 4(m) has expired.  The Court discusses the Petition filed on January 6, 2014, in state court as the relevant pleading because the Amended Complaint filed on October 29, 2014, was improper and has been stricken from the record.  In addition, the Court is denying Plaintiff's request to file an Amended Complaint.

[89] Although in some cases, the Court might give the plaintiff an opportunity to show cause as to why the defendants were not served in the appropriate timeframe, the Court will not do so in this case.  As noted above with regard to the numerous other Defendants, Plaintiff fails to state a claim for relief.  Allowing additional time to serve these two Defendants would serve no purpose.

[90] Doc. 10-1.

[91] *McKinney v. Okla. Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991) (quotation marks and citations omitted).

is specifically asserted against Defendant Orr.  As discussed above, Count VI fails as there are no valid underlying wrongs to support Plaintiff's claim for conspiracy.[92]   Finally, Plaintiff's proposed Amended Complaint does not cure the deficiencies in Plaintiff's Petition.  Thus, the Court dismisses Defendant Orr because there are no valid claims asserted against him.

**B.  "Plaintiff's Notice under FRCP 5.1 that Federal Rule of Civil Procedure Rule 15(a)(1) is Unconstitutional When Applied to Removed State Actions and Request for 28 § 2403 Certification" (Doc. 36)**

Plaintiff also filed a Notice under Federal Rule of Civil Procedure 5.1 that he questions the constitutionality of Federal Rule of Civil Procedure 15(a)(1) when applied to removed state actions.  Plaintiff appears to complain about the 21 day timeframe in Fed. R. Civ. P. 15(a)(1)(B) for allowing an amendment to a pleading once as a matter of right.  Pursuant to 28 U.S.C. § 2403, and Fed. R. Civ. P. 5.1(b),[93] the Court issued a certification to the United States Attorney General that Plaintiff questioned the constitutionality of Fed. R. Civ. P. 15(a)(1).[94]   The Court, however, under Fed. R. Civ. P. 5.1(c) rejects Plaintiff's constitutional challenge.  Thus, the Court denies Plaintiff's motion (Doc. 36).

---

[92] Although Counts II and III reference Orr, it does not appear that Plaintiff asserts these claims specifically against Orr.  Instead, these claims appear to be directed toward HPP and Cherokee Wells.  To the extent that these claims are potentially asserted against Defendant Orr, these claims would also fail for the reasons stated in detail above in Section III(b)(1)(b)-(c).

[93] Fed. R. Civ. P. 5.1(b) provides that "[t]he court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned."  28 U.S.C. § 2403(a) provides that "[i]n any action, suit or proceeding in a court of the United States to which the United States . . . is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality."

[94] Doc. 44.

### C.  Plaintiff's Motion to Appoint Counsel (Doc. 45)

On January 29, 2015, Plaintiff filed a Motion to Appoint Counsel.  In this motion, he states that he seeks the appointment of counsel because he has been unable to locate counsel to represent him or cannot pay counsel to represent him.[95]  Generally, there is no constitutional right to the appointment of counsel in civil cases.[96]  In light of the Court finding that Plaintiff cannot state a claim and the dismissal of this case,[97] the Court denies Plaintiff's motion as moot.

**IT IS THEREFORE ORDERED** that Defendants' Motions to Strike Amended Complaint (Docs. 31, 33) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend Complaint (Doc. 34) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant JAG's Motion for Judgment on the Pleadings (Doc. 25) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Heavy Petroleum Partners, LLC; Cherokee Wells, LLC; Robert Defeo, and Jens Hansen's Amended Motion to Dismiss (Doc. 27) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Notice Under Federal Rule of Civil Procedure 5.1 (Doc. 36) is **DENIED**.

---

[95] As noted above, the Court allowed Plaintiff time to locate new counsel during the December status conference.

[96] *Nelson v. Boeing Co.*, 446 F.3d 1118, 1120-22 (10th Cir. 2006) (finding no constitutional right for appointment of counsel in civil cases).

[97] One of the factors to consider when deciding whether to appoint counsel is the merits of the plaintiff's claim. *See Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (stating that the four factors applicable to in forma pauperis requests for counsel include (1) the merits of the plaintiff's claim, (2) the nature of the factual issues and the plaintiff's ability to investigate the claim, (3) the plaintiff's ability to present his claim, and (4) the complexity of the legal issues).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel (Doc. 45) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Arden Ellis and Prometheus Petroleum are dismissed without prejudice.

**IT IS FURTHER ORDERED** that Defendant David Orr is dismissed from the case.

**IT IS SO ORDERED**.

Dated this 4th day of February, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE